UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | NO. 5:22-cr-00197-1 |
| VERSUS | U.S. JUDGE FOOTE |
| HOWARD DAVIS | U.S. MAGISTRATE JUDGE HORNSBY |

### **HOWARD DAVIS' MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 29**

MAY IT PLEASE THE COURT:

The Government failed to prove beyond a reasonable doubt that Howard Davis (1) knowingly possessed a controlled substance; and/or (2) possessed a controlled substance with the intent to distribute it. Specifically, the Government failed to establish beyond a reasonable doubt that Mr. Davis knew or should have known about cocaine in the trunk of a car owned by Dechona Michelle Bullock, Mr. Davis' common-law wife, solely because he was driving the car when it was stopped and searched. Further, the Government failed to establish beyond a reasonable doubt that Mr. Davis had constructive and/or actual possession of the cocaine in Ms. Bullock's car solely because he was driving the car when it was stopped and searched. *See United States v. Campos-Ayala,* 21-50642, 2023 U.S. App. LEXIS 14176, at p. 8 (5th Cir. 6/7/2023) (noting that more than mere presence must be proven by the Government and that even arranging marijuana bundles in a car is not necessarily enough to prove a defendant

had "the ability to reduce an object to actual possession." (internal quotation marks and footnote omitted)).

Mr. Davis told Louisiana State Police Trooper Justin Wardell he had been in Shreveport for days with a friend whose mother was hospitalized with cancer, a story that remained consistent despite Trooper Wardell's deceptive questioning. Trooper Wardell was suspicious of this claim because data from license plate readers indicated Ms. Bullock's car had made a "flip trip" from North Carolina to Dallas the day before Mr. Davis was stopped.

Trooper Wardell also felt Mr. Davis' story lacked sufficient details. However, the fact Mr. Davis did not know the name of a hospital or the street names in Shreveport was explained by the facts that others drove Mr. Davis while Mr. Davis was in Shreveport, that Mr. Davis was in Shreveport for an emotionally draining reason (visiting a friend whose mother was hospitalized with cancer), and Mr. Davis' lack of familiarity with Shreveport, a city he rarely visited.

Similarly, Mr. Davis' failure to remember the name of clubs in Dallas does not link Mr. Davis to the cocaine in Ms. Bullock's car. Mr. Davis did recall the name of the district in Dallas where the clubs were, clubs there was no evidence Mr. Davis had visited more than once. While Mr. Davis did not correctly name Deep Ellum, the Dallas district, his answer was close.

Most importantly, Ms. Bullock owned the car Mr. Davis was driving. At trial, Trooper Wardell admitted he had no idea who drove Ms. Bullock's car from North Carolina to Dallas or how long Mr. Davis had been driving on the day Trooper Wardell stopped him.

While Trooper Wardell doubted Mr. Davis' story, he did nothing to fact check the story adequately. That is, Trooper Wardell did not ask Mr. Davis for the number of his friend in Shreveport. Further, when Mr. Davis informed Trooper Wardell that a woman had driven Ms. Bullock's car in Shreveport, Trooper Wardell did not ask for the woman's number.

Moreover, when Ms. Bullock was on FaceTime with Mr. Davis, Trooper Wardell spoke with her. However, Trooper Wardell failed to ask Ms. Bullock how long Mr. Davis had her car, when and where Mr. Davis took possession of her car, whom Mr. Davis took possession of her car from, or even where Ms. Bullock physically was when she was on FaceTime.

At trial, the Government introduced Mr. Davis' statement that he only had the clothes he was wearing. However, the Government, then, implied that clothes recovered from a backpack in the trunk of Ms. Bullock's car belonged to Mr. Davis. Yet, the Government failed to seize these clothes and could not offer them into evidence or establish whether they, in fact, fit Mr. Davis.

Thus, the Government offered insufficient evidence to connect these clothes to Mr. Davis. Indeed, there was no evidence that any paperwork or other evidence linked Mr. Davis to the backpack. There was no DNA or fingerprint evidence linking Mr. Davis to the clothes or to the backpack.

Similarly, the Government failed to connect Mr. Davis to the cocaine recovered from Ms. Bullock's car. There was no DNA or fingerprint evidence linking Mr. Davis to the cocaine, to its packaging, or to the bag it was in, even though the DEA lab could have conducted such examinations.

Certainly, there may be reason to believe Mr. Davis drove Ms. Bullock's car from North Carolina to Dallas and was headed back to North Carolina on a "flip trip." However, the Government failed to establish how long the cocaine had been in the car, who put the cocaine in the car, or how long Mr. Davis had been in Ms. Bullock's car the day he was stopped, other than the time necessary to drive from Shreveport to where Ms. Bullock's car was stopped in Webster Parish.

Trooper Wardell could have sought answers to such questions. He could have asked Mr. Davis (1) how long he had been driving that day; (2) how long he had left to drive that day; (3) when/if Mr. Davis drove Ms. Bullock's car down from North Carolina; (4) who/if anyone drove down with him; and (5) who/if anyone drove Ms. Bullock's car to Dallas. These questions could have

helped the Government prove Mr. Davis' guilt beyond a reasonable doubt.

However, Trooper Wardell was not concerned with proof beyond a reasonable doubt. Rather, Trooper Wardell wanted to ask only the right questions to justify a roadside search of Ms. Bullock's car.

For the reasons cited herein, the Government failed to prove beyond a reasonable doubt that Mr. Davis knew the cocaine was in Ms. Bullock's car-that he knowingly possessed the cocaine-or that Mr. Davis possessed the cocaine with the intent to distribute it-that he had the ability to reduce the cocaine to actual possession. Accordingly, Mr. Davis respectfully requests that this Court grant his motion for judgment of acquittal and enter a judgment of acquittal in his favor.

| | |
|---|---|
| 6/27/23 | /s/ Douglas Lee Harville |
| Date | Douglas Lee Harville, #27235 |
| | The Harville Law Firm, LLC |
| | P.O. Box 52988 |
| | Shreveport, LA 71135-2988 |
| | Telephone: (318) 222-1700 |
| | Telecopier: (318) 222-1701 |
| | lee.harville@theharvillelawfirm.com |
| | Counsel for Howard Davis |

**CERTIFICATE**

I HEREBY CERTIFY that on June 27, 2023, a copy of the above and foregoing, HOWARD DAVIS' MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 29, was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to the United States Attorney's Office by operation of the court's electronic filing system.

Shreveport, Louisiana, this 27th day of June, 2023.


/s/ Douglas Lee Harville
Douglas Lee Harville, #27235