UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 22-197-01 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| HOWARD DAVIS | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM ORDER

Before the Court is a motion for judgment of acquittal filed by the Defendant, Howard Davis ("Davis"). Record Document 66. The Government opposes this motion. See Record Document 68. Following a thorough review of the parties' submissions and the record, the Defendant's motion is **DENIED**.

**I.  Background.**

Davis was indicted by a federal grand jury with one count of possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841. Record Document 1. The charge stemmed from an August 2, 2022, traffic stop on I-20 in Webster Parish, Louisiana in which Davis was the sole occupant of the stopped car. Ultimately, law enforcement officers discovered four and a half kilograms of cocaine in the trunk of the car.

The case proceeded to a two-day jury trial beginning on June 12, 2023. The jury heard testimony about the traffic stop from Louisiana State Police Trooper Justin Wardell. He explained that he conducted the traffic stop on a gray Honda Accord driven by the Defendant. Although Davis was the sole occupant of the car, the vehicle was registered in North Carolina to a woman with the last name of Bullock. Trooper Wardell told the jury

1

that a license plate reader database showed the car had been in North Carolina on August 1, 2022, the morning before the traffic stop, and was in Dallas, Texas by 9:00 p.m. that same night. By the time of the 8:00 a.m. traffic stop on August 2, 2022 (the following day), the Honda Accord was driving eastbound in Webster Parish.

Trooper Wardell testified about the suspicious and inconsistent story Davis provided regarding where he had been and what he had been doing in the Shreveport area. Davis claimed he had been visiting a friend in Shreveport for the past two to three days, which contradicted the license plate reader information. Davis was unable to identify the neighborhood or street his friend lived on in Shreveport; and, he later said he had been visiting a friend's mother in the hospital, but could not provide the name, location, or a description of the hospital. When Trooper Wardell told Davis that the database showed the Honda Accord being driven in Dallas the prior night, Davis claimed that he and his friend went to Dallas to go clubbing; yet, Davis could not recall the name of any clubs they had visited. Davis also denied driving the car from Shreveport to Dallas and, instead, said he rode with a friend to Dallas.

Trooper Wardell testified that four air fresheners were present in the car, and he discussed the overwhelming smell they produced. Another witness later testified that Davis smelled very strongly of air freshener. The jury learned that a police K-9 conducted an open air sniff around the vehicle and gave a positive alert. Trooper Wardell explained that when he was preparing to search the car, he asked Davis whether Davis had any luggage in the vehicle. Davis responded that he had only the clothes he was wearing, despite having allegedly been in Shreveport for a few days and having gone clubbing in

2

Dallas the night before. Trooper Wardell testified that upon a search of the trunk, he found a backpack that contained clothes in size 2XL, along with a pair of size 11 tennis shoes. The jury learned that the clothing size was consistent with Davis; and a subsequent witness testified that Davis admitted he wore a size 11 shoe.

The testimony established that underneath the backpack was a tote bag which contained five bricks of cocaine, totaling four and a half kilograms. The tote bag had an open top and was not sealed. As the Court observed at trial, there was no zipper or snap to close the top of the bag. The backpack containing the clothes was simply sitting on top of the open tote bag.

DEA Special Agent Paul Hursey was called to testify as a drug trafficking expert. Among other things, he explained to the jury that Dallas is a source city for drugs, that drug traffickers make turnaround trips to source cities to buy drugs in bulk quantities, and that drug traffickers use items like air fresheners to prevent drug dogs from detecting the scent of drugs. Special Agent Hursey also testified that the wholesale value of the cocaine in the Honda Accord was approximately $25,000 per kilogram and that its street value was between $161,000 and $193,000.

Davis did not testify at trial, nor did he present a case-in-chief. Instead, through cross-examination of the Government witnesses, he attacked the evidence on two elements of the Government's case.[1] On the second day of trial, the jury convicted Davis. This motion followed Davis's conviction. As at trial, Davis contests the jury's determination

---

[1] Neither at trial nor in his post-trial motion does Davis contest that the substance was, in fact, cocaine or that the quantity of the cocaine was over 500 grams.

on two elements: (1) that he knowingly possessed the cocaine and (2) that he intended to distribute it.

## II. Standard of Review for Rule 29 Judgment of Acquittal.

The standard for evaluating a defendant's motion for acquittal is whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781 (1979). Thus, the Court's task at this stage is to view not only the evidence, but also all reasonable inferences, in the light most favorable to the Government. See United States v. Mendoza, 522 F.3d 482, 488 (5th Cir. 2008). "[A]ll credibility determinations are made in the light most favorable to the verdict." Id. (quoting United States v. Moreno, 185 F.3d 465, 471 (5th Cir. 1999)). "In effect, the court assumes the truth of the evidence offered by the prosecution." United States v. Robertson, 110 F.3d 1113, 1117 (5th Cir. 1997).

The Court reviews the sufficiency of circumstantial evidence in the same manner that it reviews the sufficiency of direct evidence. See United States v. DeJean, 613 F.2d 1356, 1358 (5th Cir. 1980). Moreover, "[a]ll evidence is considered, not just that supporting the verdict, but the evidence need not conclusively disprove alternatives; the jury is free to choose among reasonable constructions of the evidence." United States v. Peterson, 244 F.3d 385, 389 (5th Cir. 2001) (internal marks omitted). "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt . . . ." United States v. Lopez, 74 F.3d 575, 577 (5th Cir. 1996). "Circumstances altogether inconclusive, if separately considered, may, by their

4

number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof." United States v. Vasquez, 677 F.3d 685, 692 (5th Cir. 2012). "Jurors may properly 'use their common sense' and 'evaluate the facts in light of their common knowledge of the natural tendencies and inclinations of human beings.'" Id. (quoting United States v. Ayala, 887 F.2d 62, 67 (5th Cir. 1989)).

Therefore, this Court will not weigh the evidence or assess the credibility of witnesses, Lopez, 74 F.3d at 577, but rather will determine "only whether the jury made a rational decision, not whether its verdict was correct on the issue of guilt or innocence." United States v. Dean, 59 F.3d 1479, 1484 (5th Cir. 1995). However, "[a] verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." United States v. Moreland, 665 F.3d 137, 149 (5th Cir. 2011). "If the evidence is relatively balanced, a reasonable juror could not convict beyond a reasonable doubt . . . ." Peterson, 244 F.3d at 389. Under those circumstances, the Court should grant the Defendant's motion.

### III. **Analysis.**

The Court finds that the evidence presented during the two-day trial in this matter clearly supported the jury's verdict, which found Davis guilty of possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine.

The jury heard testimony from Trooper Wardell about the license plate reader database which showed the Honda Accord was in North Carolina on the morning of August 1, 2022, and that it headed west and was located in Dallas, Texas by 9:00 p.m. on August

5

1, 2022.  And yet, by 8:00 a.m. on August 2, 2022, the car was in Webster Parish heading back eastbound on I-20.  Coupled with this turnaround trip, the jury learned of Davis's version of his itinerary, which was that he had been visiting a friend in Shreveport for the past few days.  However, as the jury heard, Davis could not identify the neighborhood or street his friend lived on in Shreveport; and, he later said he had been visiting a friend's mother in the hospital, but could not provide the name, location, or a description of the hospital.  The jury learned this story was inconsistent with the license plate reader which showed the car in Dallas when Davis was supposedly in Shreveport.  The jury learned that when confronted with the information that the car was in Dallas, Davis claimed he went clubbing in Dallas the night before.  However, he said he did not drive the Accord to Dallas but rather rode with a friend.  Put simply, the jury was entitled to disbelieve Davis's story.

Further, Davis said he had only the clothes on his body, yet there was a backpack in the trunk containing clothing and shoes consistent with his size.  The jury was permitted to infer that the clothing and shoes in the car, which were consistent with Davis's size, likely belonged to him. And, the jury was entitled to conclude that Davis placed his backpack of clothes directly on top of an open tote bag containing five bricks of cocaine.

The jury knew that the car did not belong to Davis and knew that he was merely using it for this trip.  However, the jury was permitted to infer that no reasonable person would leave four and a half kilograms of cocaine, valued between $150,000 and $200,000, sitting in the trunk of a car when that car was loaned to someone else.  Further, the jury was entitled to credit Special Agent Hursey's testimony as to some of the common practices of drug traffickers, which helped to explain why someone would make a

turnaround trip from North Carolina to Dallas, why he would have so many air fresheners in the car,[2] and why he would have such a large quantity of cocaine. Here, the jury's determination that Davis knowingly possessed the cocaine was supported by the evidence adduced at trial.

Moreover, the jury's conclusion that Davis possessed with the intent to distribute was supported by the trial evidence. Based on the quantity of cocaine—four and a half kilograms—, the jury was entitled to conclude this was not a personal use amount. Furthermore, based on both the wholesale value of the drugs (well over $100,000) and street value of the cocaine (between $150,000 and $200,000), the jury was entitled to infer that the drugs were intended for distribution. The jury was permitted to determine that possession of this much cocaine, with such a significant resale value, was inconsistent with personal use and was more consistent with distribution.

Given the substantial evidence presented at trial, it can hardly be said that the jury's guilty verdict was not a "rational decision," nor can the jury be faulted for declining to accept the defense's suggestion that the cocaine just happened to be in a car Davis was driving on a turnaround trip from North Carolina to Dallas.[3] Accordingly, the Defendant's motion for judgment of acquittal is denied.

---

[2] The witness testimony established that the car smelled strongly of air fresheners, so much so in fact that a witness from the jail testified that Davis smelled like air fresheners during the booking process.

[3] Further, the Defendant's reliance on United States v. Campos-Ayala, 70 F.4th 261 (5th Cir. 2023), for the proposition that a defendant's mere presence in a car containing drugs is insufficient to sustain a conviction is unpersuasive. Indeed, the Fifth Circuit has vacated the panel opinion in Campos-Ayala, and the case will be reheard by the en banc court. See United States v. Campos-Ayala, 81 F.4th 460 (5th Cir. 2023).

7

## IV. Conclusion.

After a careful and thorough review of the record and the governing jurisprudence, the Defendant's motion for a judgment of acquittal [Record Document 66] be and is hereby **DENIED**.

**THUS DONE AND SIGNED** this 21st day of November, 2023.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE